UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOYE SCHMELING, individually and
on behalf of all others similarly situated,

        Plaintiff,

        v.                                Case No. 20-C-768

UNITED COLLECTION BUREAU, INC.,

        Defendant.

## DECISION AND ORDER

Plaintiff Joye Schmeling, individually and on behalf of all others similarly situated, filed this action on August 25, 2020, alleging Defendant United Collection Bureau, Inc. (UCB) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, when UCB sent a letter to Schmeling seeking to collect a debt she owed to JPMorgan Chase Bank, N.A. Presently before the court is UCB's motion to dismiss the amended complaint for failure to state a claim. For the following reasons, UCB's motion will be granted.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, she must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Schmeling, a Wisconsin resident, originally incurred and defaulted on a financial obligation owed to JPMorgan Chase Bank, N.A. UCB, a corporation formed under the laws of Ohio, regularly engages in the collection of defaulted consumer debts owed to others. On July 7, 2019, UCB mailed a letter to Schmeling in its capacity as a debt collector. The letter informed Schmeling that a debt she incurred with JPMorgan Chase Bank, N.A. was placed with UCB for collection.

The July 7, 2019 letter was the first of three letters from UCB to Schmeling. It stated that the "Creditor" is "JPMorgan Chase Bank, N.A.," the "Account Balance" is "$1352.74," and advised Schmeling that "[t]his is an attempt to collect a debt by [UCB], a debt collector, and any information obtained will be used for that purpose." Dkt. No. 18-1 at 1. The letter also included an offer of settlement, which was $541.10, or 40% of the Account Balance. *Id.*; Dkt. No. 21 at 3. The language of the offer provided: "If you are interested in a reduction of the balance, we are authorized to offer you a settlement for $541.10. We are not obligated to renew this offer." Dkt. No. 18-1 at 1.

UCB followed its initial correspondence to Schmeling with letters on July 9, 2019, and October 9, 2019, each extending different settlement offers further discounting the total settlement

2

amount. *Id.*; Dkt. No. 18-2 at 1; Dkt. No. 18-3 at 1. The July 9, 2019 letter discounted UCB's July 7, 2019 reduced-balance settlement offer by 5% (35% of the Account Balance), and the October 9, 2019 letter discounted UCB's July 7, 2019 reduced-balance settlement offer by another 10% (30% of the Account Balance). Dkt. No. 18-2 at 1; Dkt. No. 18-3 at 1. In the July 9, 2019, and October 9, 2019 letters, UCB also offered multiple-payment options with installments over two, twelve, or twenty-four months to settle the full balance being collected by UCB. *Id.* Directly following the terms of the settlement offers in the letters, UCB included the statement: "We are not obligated to renew this offer." *Id.*

Schmeling alleges the statement in UCB's July 7, 2019 letter, "'[w]e are not obligated to renew this offer[,]' is materially false, deceptive, and misleading because UCB is *always* obligated by the creditor to renew the offer stated in the [l]etter." Dkt. No. 18 at 4. Schmeling also alleges the same statement "is a materially false statement because it influences the unsophisticated consumer's decision to pay [d]ebt." *Id.* She asserts that the July 7, 2019 letter violated the FDCPA by using a false, deceptive, or misleading representation or means that in one or more ways violates 15 U.S.C. § 1692e. *Id.* at 7. Specifically, Schmeling alleges UCB's July 7, 2019 letter violates § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt; and § 1692e(10) by using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. *Id.*

Schmeling, like many FDCPA plaintiffs, filed her action as a putative class action lawsuit on behalf of herself and all other persons to whom UCB mailed its letter(s) at a Wisconsin address. This, of course, significantly increases the value of her case from the maximum of $1,000 in statutory damages that would otherwise apply. In a class action, should its letter be found to violate the FDCPA, UCB faces not only statutory damages for each letter it sent out subject to the cap of the lesser of $500,000 or 1 per centum of its net worth, but also the substantial attorneys' fees and

3

other costs that class actions generate for both parties. 15 U.S.C. § 1692k(a). In other words, it is not an insignificant case.

## ANALYSIS

The FDCPA "is designed to protect consumers from abusive and unfair debt collection practices." 15 U.S.C. § 1692(e). A debt collector's communications are tested for compliance with the FDCPA under the "unsophisticated consumer" standard. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012). Under this standard, the letter "must be clear and comprehensible to an individual who is 'uniformed, naïve, [and] trusting,' but not without a rudimentary knowledge about the financial world or incapable of making basic deductions and inferences." *Id.* (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003)). An unsophisticated consumer is not a "dimwit" who interprets letters "in a bizarre or idiosyncratic fashion" but is instead a person who possesses "reasonable intelligence." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Schmeling alleges that the statement in UCB's July 7, 2019 letter that "[w]e are not obligated to renew this offer" is materially false, deceptive, and misleading "because UCB is *always* obligated by the creditor to renew the offer stated in the [l]etter" and "because it influences the unsophisticated consumer's decision to pay the [d]ebt." Dkt. No. 18 at 4–5. UCB argues that Schmeling has failed to state a claim upon which relief can be granted because the letter at issue is not deceptive.

In *Johnson v. Enhanced Recovery Co., LLC*, 961 F.3d 975 (7th Cir. 2020), the Seventh Circuit said that "complaints alleging misleading communications under § 1692e are rarely subject to dismissal for failure to state a claim because in this circuit, whether a communication is false, deceptive, or misleading under the FDCPA is a question of fact." *Id.* at 980 (citations omitted).

4

"Despite this general rule," however, the court also recognized that "a claim under § 1692e may be dismissed when it is clear from the face of the communication that no reasonable person, however unsophisticated, would be deceived by the allegedly false or misleading statement." *Id.* at 980–81 (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019); *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574–75 (7th Cir. 2004) ("If it is apparent from a reading of the letter that not even a 'significant fraction of the population' would be misled by it . . . the court should reject it without requiring evidence beyond the letter itself.")). In this case, it is clear that not even "a significant portion of the population" would be deceived by the allegedly false or misleading letter, because UCB used the safe-harbor language created by the Seventh Circuit in *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007).

In *Evory*, the Seventh Circuit addressed whether a letter that included a settlement offer with an expiration date was misleading to the unsophisticated consumer. *Id.* at 775–77. While the court recognized that "[t]here is nothing improper about making a settlement offer," it expressed its concern that the settlement language contained in a letter may be misleading because "unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount." *Id.* at 775. The court also recognized that "the settlement process would disintegrate if the debt collector had to disclose the consequences of the consumer's rejecting [its] initial offer." *Id.* To balance these concerns, the court fashioned safe-harbor language—"[w]e are not obligated to renew this offer"—for debt collectors to use when making settlement offers. *Id.* at 776. The court explained this statement would inform the unsophisticated consumer that there was a "renewal possibility but that it [was] not assured." *Id.*

The Seventh Circuit recently confirmed the use of the *Evory* safe-harbor language in *Preston v. Midland Credit Management, Inc.*, 948 F.3d 772 (7th Cir. 2020). There, as in this case,

5

the plaintiff claimed the settlement offer contained in the debt collection letter he received violated the FDCPA. The challenged letter in that case also included the language "Act Now" and "TIME SENSTIVE DOCUMENT" and further provided time limits to suggest settling the debt as soon as possible. *Id.* at 785. Although the court concluded that the inclusion of the additional language on the envelope violated 15 U.S.C. § 1692f(8) of the FDCPA, it reaffirmed its holding that the use of the safe-harbor language avoided any violation of § 1692e. In so ruling, the court rejected the plaintiff's argument that the additional wording on the envelope rendered the safe harbor language "meaningless" and ineffectual. *Id.* at 785–86. Instead, the court held the safe-harbor language was "accurately and appropriately used." *Id.* at 786. The court reasoned that the *Evory* safe-harbor language's purpose was to cure misunderstandings that unsophisticated consumers might have about the meaning of settlement offers, and its placement relative to the settlement offer language did not diminish its effect. *Id.* at 785–86.

Considering the Seventh Circuit's holding in *Evory*, reaffirmed in *Preston*, Schmeling's claim should be dismissed. In this case, UCB's letter contained the *Evory* safe-harbor language, which was located directly after the settlement offer. The letter conveyed to the unsophisticated consumer that there was a "renewal possibility but that it [was] not assured." *Evory*, 505 F.3d at 776.

Schmeling argues UCB's use of the *Evory* safe-harbor language—"[w]e are not obligated to renew this offer"—is materially false and deceptive because "Chase Bank required UCB to *always* renew the offer," as evinced by the multiple communications UCB sent her regarding the debt. Dkt. No. 20 at 5. But it's allegation that Chase required UCB to always renew the offer is not plausible. The fact that multiple letters with more favorable offers were sent does not mean that UCB or Chase Bank was required to renew the offer. *Evory* did not suggest that the safe-harbor language could not be used in situations where multiple settlement letters are sent to the

6

debtor.  To the contrary, *Evory* envisioned this very situation where the debt collector would offer "50 percent if you pay us by May 14, but if you don't, we'll probably offer you the same or even better deal later, and if you refuse that, we'll probably give up and you'll never have to pay a cent of the debt you owe," noting that if such disclosure was required there would be no point in making offers.  505 F.3d at 775.  Because there would be no point in making offers if § 1692e required debt collectors to assure consumers settlement offers would be renewed, the Seventh Circuit fashioned the *Evory* safe-harbor language to protect "the unsophisticated consumer . . . against receiving a false impression of [their] options.  *Id.* at 776.  Because UCB used the *Evory* safe-harbor language in its collection letters, it did not violate § 1692e of the FDCPA.  Schmeling's second amended complaint fails to state a claim upon which relief can be granted and will therefore be dismissed.

## CONCLUSION

For these reasons, UCB's motion to dismiss (Dkt. No. 15) is **GRANTED**.  The case is dismissed.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of October, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court
